UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION and
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

*Plaintiffs*,

v.

DEPARTMENT OF JUSTICE, including its
component the OFFICE OF LEGAL POLICY,

*Defendant*.

Case No:  1:26-cv-3476

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, seeking to compel the immediate release of  communications between the Office of Legal Policy ("OLP"), a component of the Department of Justice ("DOJ") (collectively "Defendant"), and State Attorneys General about States' applications to the United States Attorney General ("Attorney General") for certification of the States' capital counsel mechanisms for indigent prisoners under 28 U.S.C. § 2265 and 28 C.F.R. Part 26.

2. Upon certification, a State may avail itself of Congress's *quid pro quo* arrangement under Chapter 154 of Title 28, which allows a State to secure fast-track litigation of habeas petitions in capital cases in return for demonstrating that the State provides a system of adequate representation in state post-conviction cases. Specifically, *if* a State meets § 2265's requirements to guarantee death-sentenced indigent defendants the timely appointment and adequate compensation of competent post-conviction counsel and reasonable litigation expenses, *then* the

State can claim the benefit of special fast-track procedures that greatly shorten the statute of limitations for federal habeas petitions, significantly expedite the federal habeas proceedings, and sharply curtail the scope of federal habeas review of state judgments. *See* 28 U.S.C. § 2265.

3. The records sought are a matter of grave public concern. The U.S. Attorney General purports to be a disinterested and neutral decisionmaker for these state applications. Yet, under § 2265, the Nation's highest prosecutor—the Attorney General—is deciding the quality of the defense counsel for individuals challenging their death sentences. The Attorney General and advising officers in OLP have engaged in conduct that indicates an unconstitutional bias towards supporting State Attorneys General's efforts to seek certification and swiftly implement executions. The unfairness is stark and concrete.

4. As detailed below, the Attorney General and OLP officers have made repeated statements in support of expanding the use of the death penalty and state certification under Chapter 154. They have encouraged States to apply for certification for fast-track habeas review. They have engaged in *ex parte* communications with States with pending applications under § 2265(a) or with States which are preparing applications. Removing any façade of neutrality or balance, the Attorney General recently published notice of a new proposed rule for determining State certification applications that allows for determination based only on submissions from States and eliminates public comment, including from those most harmed by the Attorney General's certification of a State—state prisoners sentenced to death and their counsel.

5. The requested records, together with these actions by the Attorney General and OLP officials, will shed light on the U.S. Attorney General's partiality when considering States' certification decisions. The records sought through this request will help the public understand

the extent to which the U.S. Attorney General is making biased decisions with life-or-death consequences.

6. Plaintiffs the American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "ACLU" or "Plaintiffs"), submitted a FOIA request to DOJ on March 24, 2026, seeking release of records concerning OLP's communications with state Attorneys General regarding State applications under 28 U.S.C. § 2265, and other related records. *See* Exhibit A ("FOIA Request"). To date, DOJ has not processed the request nor released any responsive records, notwithstanding DOJ's grant of expedited processing for the request on March 27, 2026, and FOIA's requirement that agencies make a determination with respect to requests within the statutory timeframes.

7. Because the public deserves to know the extent of the Attorney General and OLP's involvement in encouraging and advising on States' certification applications, Plaintiffs now ask the Court for an injunction requiring Defendant to process their FOIA request and immediately release responsive records, and other relief as appropriate.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(b). This Court has jurisdiction to grant declaratory, injunctive, and further necessary relief pursuant to 28 U.S.C. §§ 2201-2202.

9. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant is a federal agency,  Plaintiffs' principal places of business are in New York, New York, within this district, and no real property is involved in this action.

**PARTIES**

10. Plaintiff American Civil Liberties Union is a nationwide, non-profit, non-partisan 26 U.S.C. § 501(c)(4) organization, incorporated in the District of Columbia and with its principal place of business in New York, New York. The ACLU's mission is to maintain and advance civil rights and civil liberties and to ensure that the U.S. government acts in compliance with the Constitution and laws of the United States. The ACLU is also committed to principles of transparency and accountability in government and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. The ACLU has the ability and intention to widely disseminate the requested information through a variety of sources, including reports, newsletters, news briefings, right-to-know handbooks, and other materials, to the public at no cost. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities.

11. Plaintiff American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It is incorporated in New York State, and its principal place of business is in New York City.

12. Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation together are referred to as the "ACLU."

13. Defendant DOJ is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 702. The Office of Legal Policy, from which Plaintiffs requested records, is a component of DOJ.

4

## STATUTORY AND LEGAL FRAMEWORK

14. "The Freedom of Information Act was enacted to facilitate public access to government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)). Its basic purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and hold the governors accountable to the governed." *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Consistent with this purpose, the FOIA statute creates a "strong presumption in favor of disclosure [and] places the burden on the agency to justify the withholding of any requested documents." *Ray*, 502 U.S. at 173.

15. FOIA requires federal agencies to disclose records in response to a request by a member of the public, unless those records fall within one of nine narrow statutory exemptions. 5 U.S.C. §§ 552(a)(3)(A), (b)(1)-(9). FOIA also requires an agency to make an adequate search for responsive records that is "reasonably calculated to discover the requested documents." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs., Inc. v. Sec. and Exchange Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

16. An agency must make a "determination" as to a FOIA request within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i). Upon request, an agency may also granted expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) when there is a "compelling need" for these records because "failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" or because the information is "urgen[tly]" needed by an organization primarily engaged in disseminating information to "to information the public concerning actual or alleged Federal Government activity." Further, under 5 U.S.C. § 552(a)(6)(E)(i)(II) and the relevant DOJ regulations, the

agency may also grant expedited processing if the request involves a loss of substantial due process right or the requested records involve a matter of widespread and exceptional media interest that raises questions about the integrity of DOJ's action. 28 C.F.R. § 16.5(d)(iii), (iv) (2014). Upon a grant of expedited processing, the agency "shall process" the request "as soon as practicable." 5 U.S.C. § 522(A)(6)(E)(iii).

17. In "unusual circumstances," an agency may extend its processing deadline generally by no more than ten working days, but it must provide "written notice . . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B); 28 C.F.R. §16.5(c). At a minimum, a "determination" must "indicate within the relevant time period the scope of the documents [the agency] will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) (Kavanaugh, J.); *see also Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp.3d 810, 815 (S.D.N.Y. 2017).

18. If the agency fails to comply with a request within the statutory time period, a FOIA requester is deemed to have exhausted its administrative remedies and can proceeding directly to the district court, where the agency must show "exceptional circumstances" justifying its untimeliness and due diligence in remedying the violation. 5 U.S.C. § 552(a)(6)(C). Per the FOIA statute, "the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section . . . ." 5 U.S.C. § 552(a)(6)(C)(ii).

19. A district court has jurisdiction to enjoin the agency from withholding records and order production of records that are subject to disclosure. 5 U.S.C. § 552(a)(4)(B).

**FACTS**

20. Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Public Law 104-132, section 107, 110 Stat. 1214, 1221-1226 (1996), established a *quid pro quo* arrangement: a State provides indigent defendants sentenced to death with a mechanism for competent post-conviction counsel and adequate litigation expenses in exchange for receiving the benefit of special expedited and narrowed federal habeas review by Article III courts.

21. To qualify for the fast-track procedures for federal habeas review in Chapter 154, a State must meet the requirements for an adequate post-conviction counsel mechanism in capital cases. 28 U.S.C. § 2265.

22. Originally, under AEDPA, federal courts conducting habeas reviews had the duty of deciding whether a State was eligible for the expedited procedures by having met Chapter 154's requirements. Pub. L. No. 104-132, § 107(a), 110 Stat. 1214. Since 1996, no court has found that a State was entitled to apply Chapter 154's fast-track procedures against a specific individual in a federal habeas review.

23. In 2006, members of Congress expressed frustration over judicial determinations that States did not meet Chapter 154's requirements. *See* 152 Cong. Rec. 2441, 2445-46 (2006) (remarks of Sen. Kyl); 151 Cong. Rec. E2640 (daily ed. Dec. 22, 2005) (extension of remarks of Rep. Flake).

24. Congress then transferred decision-making authority from Article III courts in federal habeas review to the U.S. Attorney General and authorized the Attorney General under 28 U.S.C. § 2265(a) to "certify" that a State satisfies Chapter 154. *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 507(c)(1) (2006).

25. Between 2006 and 2024, only two States applied for certification, Arizona and Texas. On January 17, 2025, the U.S. Attorney General denied Arizona's application for certification, having withdrawn a prior determination that Arizona did qualify. Texas's application, originally dated March 11, 2013, remains pending.

26. On January 20, 2025, President Trump issued Executive Order 14164, "Restoring the Death Penalty and Protecting Public Safety," seeking to expand the use of the death penalty in the United States. *See* 90 Fed. Reg. 8463 (Jan. 30, 2025) ("Executive Order"). Among other things, section 4(b) of the Executive Order directed the Attorney General "to take all appropriate action to approve or deny any pending request for certification made by any State under 28 U.S.C. § 2265." *See id*. at 8464.

27. On February 5, 2025, the U.S. Attorney General issued a memorandum to, *inter alia*, "assist states in prosecuting capital crimes and implementing death sentences." *See* U.S. Dept. of Justice, Attorney General's Memorandum on Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions (Feb. 5, 2025), at 4.[1] Consistent with Executive Order 14164, the Attorney General directed OLP to "promptly address states' pending requests for certification pursuant to 28 U.S.C. § 2265." *See id*.

28. On May 15, 2025, former Assistant Attorney General Aaron Reitz, OLP, sent a letter to State Attorneys General inviting their applications under 28 U.S.C. § 2265 and reminding them that OLP "is ready to assist" with their certification applications.

29. Further, disclosures from state public records requests show that officials from OLP have engaged in *ex parte* communications with officials in State Attorney General's Offices

---

[1] https://www.justice.gov/ag/media/1388561/dl?inline.

to encourage States to submit applications, offer assistance with their preparation, and provide support for pending applications. For example, correspondence on an informal messaging platform between OLP Senior Counsel Alida Kass and the Principal Deputy Solicitor General at the Attorney General's Office of Texas, William Cole, shows OLP encouraging Texas to submit additional information for its pending application that was requested by DOJ, and expressly offering OLP's assistance.

30. Most recently, on March 16, 2026, the Attorney General published notice of a proposed new rule for determining State certification applications. Certification Process for State Capital Counsel Systems, 91 Fed. Reg. 12525 (proposed March 16, 2026) (to be codified at 28 C.F.R. pt. 26) ("Notice of Proposed Rule"). The Attorney General's Proposed Rule undertakes to create an entirely *ex parte* certification process, without any opportunity for habeas petitioners, their attorneys, or other interested members of the public to comment on or oppose a State's assertion that it has established an adequate post-conviction counsel mechanism. *Id*. The public comment period on the Proposed Rule ends on May 15, 2026. *Id*. at 12525.

31. Currently, seven State applications for certification are pending: Texas (initially submitted on March 11, 2013 and supplemented on December 18, 2017); Tennessee (submitted on June 6, 2025); Alabama (submitted on April 24, 2025); Mississippi (submitted on October 6, 2025); Ohio (submitted on November 6, 2025); Florida (submitted on December 16, 2025); and Oklahoma (submitted on February 25, 2026). The application for Texas was last open for public comment on December 27, 2017, and applications for Tennessee and Alabama were published for public comment on August 7, 2025. The remaining four applications were listed on the

website of the Office of Legal Policy on March 25, 2026.[2] On April 29, 2026, the DOJ published a Notice of Requests for Certification of Capital Counsel Mechanisms of Florida and Mississippi, opening the 60-day public comment for those States' certification applications. Docket No. OLP184, Notice of Requests for Certification of Capital Counsel Mechanisms of Florida and Mississippi, 91 Fed. Reg. 23116 (April 29, 2026), https://www.govinfo.gov/content/pkg/FR-2026-04-29/pdf/2026-08319.pdf.

32. On April 14, 2026, the Office of the Federal Public Defender Middle District of Tennessee (TNMD) submitted a Request for Ex Parte Communications in Docket No. OAG198, RIN 1105-AB80 as part of the Notice of Proposed Rulemaking for the Certification Process for State Capital Counsel Systems, 91 Fed. Reg. 12525. Comment ID DOJ-OAG-2026-0034-0019, https://www.regulations.gov/comment/DOJ-OAG-2026-0034-0019. The TNMD requested the following:

    a. All written communications between Department officials and any federal and non-federal parties or entities concerning the proposed Chapter 154 regulation occurring after publication of the Notice of Proposed Rulemaking;

    b. Written summaries of all oral communications concerning the proposed rule, including meetings, telephone calls, or information consultations; and

    c. Records identifying all DOJ personnel who participated in such communications and the date on which they occurred.

---

[2] *See* Office of Legal Policy | Pending Requests & Final Decisions, *see* https://perma.cc/37T9-5YRE.

33. On May 5, 2026, the DOJ published a response to the TN MD dated May 1, 2026, on Regulations.gov in Docket No. OAG198, RIN 1105-AB80. DOJ, Response to FPD MD Tenn Request for Disclosure for Ex Parte Communications, DOJ-OAG-2026-0034-0019 (posted May 5, 2026). The DOJ stated that: "We are not aware of any information or communications, as described in your letter, about the rulemaking on state certification procedures." The DOJ acknowledged that it "did, however, recently send letters to the offices of the state attorneys general with pending certification requests to address the timing of the Attorney General's decisions on those requests." The DOJ stated that the letters "mentioned the rulemaking in passing" and provided a webpage address for accessing them.

34. On April 30, 2026, OLP had published six letters that Assistant Attorney General Daniel E. Burrows sent on March 27, 2026, to the Attorneys General for Alabama, Florida, Mississippi, Ohio, Oklahoma, and Tennessee—states with pending applications for certification. *See*, DOJ OLP, Pending Requests & Final Decisions, https://www.justice.gov/olp/pending-requests-final-decisions ("March 27, 2026 Letters"). In the March 27, 2026 Letters, Assistant Attorney General Burrows confirmed that since his confirmation in February 2026, he has "prioritized chapter 154 certifications." *See*, *e.g.*, Letter from Daniel E. Burrows, Assistant Attorney General to The Honorable Jonothan Skrmetti, Attorney General, State of Tennessee (March 27, 2026), https://www.justice.gov/olp/media/1438826/dl?inline. The March 27, 2026 Letters, first gave the Attorneys General individualized notice of the March 16, 2026 Notice of Proposed Rulemaking and encouraged the Attorneys General to submit comments. Second, the letters informed the Attorneys General when OLP intended to complete its review of their States' pending certification applications and when the Attorney General hoped to issue a determination. Third, OLP invited the Attorneys General to choose the regulations that would be applicable to

the determination of their States's application—either the current 2013 Rule or any new rules resulting from the current rulemaking process. Finally, the letter emphasized OLP's "commitment to justice" by "the carrying out of lawful death sentences at the state level."

**The FOIA Request to DOJ**

35. On March 24, 2026, Plaintiffs submitted a FOIA request to Defendant (Exhibit A) seeking records created from January 20, 2025, to the present, falling within the following categories:

    a. Any communications between employees or agents of OLP, including former Attorney General Pamela Bondi, and employees or agents of any State Office of the Attorney General regarding the process for a request for certification under 28 U.S.C. § 2265 ("certification process");

    b. Any communications between OLP and a State OAG regarding a pending request or potential request by any State for certification for expedited and limited federal habeas review in capital cases pursuant to § 2265 ("certification request");

    c. Any communications between OLP and any other officials or employees of any State other than those in the State OAG regarding the certification process or a certification request, including but not limited to the Office of the Governor ("other certification communications"); and

    d. Any internal OLP memoranda and communications regarding an existing or possible certification request from any State, as well as appointment calendars reflecting the times and dates of any meetings where an existing or possible certification request was discussed (including a complete list of

attendees), as well as phone or virtual meeting records wherein an existing or possible certification request was discussed (including a complete list of participants), collectively ("internal certification request communications").

36. Plaintiffs requested expedited processing of the FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(E) as well as 28 C.F.R. § 16.5(d)(iii), (iv) (2014), because—based upon prior disclosures in state public records requests—the requested records will reveal *ex parte* communications between OLP lawyers and State officials offering assistance with pending and forthcoming State applications for fast-track habeas review for prisoners sentenced to death. This conduct creates an imminent threat to the life and physical safety of individuals and gives rise to a loss of substantial due process rights, on a matter of widespread and exceptional media interest that raises questions about the integrity of OLP's actions." 28 C.F.R. § 16.5(e)(1)(ii) (2018). *See* Exhibit A at 4-10. The Plaintiffs explained that the ACLU is an organization primarily engaged in disseminating information to the public about this actual or alleged government activity. *Id.* at 7-9.

37. Plaintiffs also requested a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.R.F. § 16.10(k)(1).

### DOJ's Response to the FOIA Request

38. Under the FOIA statute, Defendant is obligated to respond to FOIA requests within 20 working days, 5 U.S.C. § 552(a)(6)(A), making Defendant's response deadline April 21, 2026.

39. By letter dated March 27, 2026, Defendant acknowledged receipt of the FOIA Request, granted Plaintiffs' request for expedited processing, and stated that it had initiated

processing of the request. Defendant also invoked the 10-day extension of time permitted under 5 U.S.C. § 552(a)(6)(B), which lapsed on May 6, 2026. Defendant did not indicate the scope of the documents it would produce or whether it would claim any exemptions with respect to any withheld documents

40. Defendant also noted that "[i]n general, there are five categories of records search options available to you" and that it was "focusing [the] records search on official correspondence (category 1), emails and attachments (category 2), and standalone documents (category 4)."  The Defendant invited Plaintiffs to notify it if Plaintiffs wanted to add additional categories of records, focus the search on different categories of records than it had identified, or agree to an alternative formulation of the FOIA Request.

41. In the same letter, Defendant deferred its decision on the request for a fee waiver.

42. On April 3, 2026, Plaintiffs submitted a follow-up letter to Defendant to confirm that category 4 records would "include those responsive to that part of the ACLU's request seeking "written communications (including email, *SMS messages and messages sent on platforms including but not limited to iMessages, Slack, Microsoft Teams, WhatsApp, and Signal*)""  and enclosed an example of such a record that the ACLU had received through a state open records request. The ACLU also agreed to exclude records published on the DOJ website or federal register.

43. The ACLU proposed priority processing and determinations on a rolling basis for certain lawyers assigned to work on Chapter 154 issues or liaise with state officials concerning the certification process, certification requests, and other certification communications. The ACLU identified these lawyers as including, but not limited to, Former Assistant Attorney General Aaron Reitz and OLP Senior Counsel Alida Kass and provided their work contact

14

information. The ACLU requested an estimated time under FOIA and DOIJ regulations by which DOJ would complete rolling processing, FOIA determinations, and disclosures.

44. Finally, the ACLU requested that OLP place the following individuals on notice of the request for records that they have produced, sent, or received, including communications on informal messaging platforms which they used for official government work: Former Assistant Attorney General Aaron Reitz, OLP Senior Counsel Alida Kass, OLP Attorney Eric T. Gormsen, OLP Attorney Nicholas Schilling, and OLP Attorney Levi Lall. The ACLU asked that these individuals be informed of their legal obligation to preserve potentially responsive records to the FOIA request.

45. By an email dated April 7, 2026, DOJ confirmed that category 4 records include the text messages described in the ACLU April 3, 2026 letter. DOJ also confirm that "the Department officials specified in your request are governed by records retention policies and accordingly are assumed to be following them." Finally, the DOJ provided its best estimate for a date of completion as December 4, 2027.

46. On April 9, 2026, the ACLU sent follow up correspondence seeking clarification on when the DOJ would begin its search and processing, and whether the DOJ would agree to the ACLU's proposal for rolling processing and disclosures to begin with the prior records identified in its April 3, 2026 letter. The ACLU repeated its request that the DOJ make a determination and disclose the initial records on or before May 3, 2026, i.e., thirty working days after receipt of the FOIA request.

47. On April 10, 2026, the DOJ informed the ACLU that expedited processing moved this request from the end of the "complex track" to the end of the "expedited track," which had

113 pending requests. The DOJ explained that rolling processing was not feasible or appropriate until the search was completed.

48. Despite urgent public interest in the involvement of the U.S. Attorney General and OLP in encouraging and actively assisting States with preparing the applications for certification under Chapter 154 that will then be decided by the Attorney General, as well as with encouraging State Attorneys General's comments and influence for the consideration of the Notice of Proposed Rule for the Certification Process for State Capital Counsel Systems, Defendant still has not released any records in response to the FOIA Request.

## CLAIMS FOR RELIEF

### CLAIM I
### Violation of 5 U.S.C. § 552
### Failure to Process Plaintiff's Request Expeditiously and as Soon as Practicable

49. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

50. Plaintiffs properly submitted the FOIA Request on March 24, 2026, requesting records within the possession, custody, and control of the Defendant.

51. Defendant granted expedited processing and was obligated under 5 U.S.C. § 552(a)(6)(A), (B) and (E) to produce records responsive to the FOIA Request on an expedited basis and as soon as practicable.

52. Plaintiffs submitted the FOIA Request on March 24, 2026. Defendant failed to issue a response, including a determination of whether to comply with the request and the reasons therefor, in the expedited time provided under 5 U.S.C. § 522(a)(6)(E) (less than 20 days, excluding Saturdays, Sundays, and legal public holidays) or within the time permitted in certain unusual circumstances pursuant to 5 U.S.C. § 522(a)(6)(B) and 28 C.F.R. § 16.5(c) (10 additional working days).

53.  Defendant's failure to disclose all responsive records within the statutory time period violates, at a minimum, 5 U.S.C. § 552(a)(6)(A), (B), and (E) and the corresponding regulations.

## CLAIM II
### Violation of 5 U.S.C. § 552
### Failure to Conduct an Adequate Search and to Disclose Responsive Records

54. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

55. Defendant is obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to the FOIA request and to promptly produce those records to Plaintiffs.

56. Upon information and belief, Defendant has not conducted any search for records responsive to the FOIA request. Defendant has not produced any records responsive to the FOIA request. Plaintiffs have a legal right to obtain such records, and no legal basis exists for Defendant's failure to search for them.

57. Defendant's failure to conduct a reasonable search and disclosure all records responsive to the FOIA request violates, at a minimum, 5 U.S.C. § 552(a)(3), and the corresponding regulations

## CLAIM III
### Violation of 5 U.S.C. § 552
### Improper Withholding of Agency Records

58. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

59. Under 5 U.S.C. § 552(a)(3)(A), Defendant is obligated to make properly requested records promptly available to a requester. Plaintiffs have a legal right under FOIA to

the timely search and release of responsive, non-exempt agency records in response to the FOIA Request.

60. Upon information and belief, Defendant currently has possession, custody, or control of the requested records. To date, Defendant has not made any records available to Plaintiffs, nor produced a *Vaughn* index.[3]

61. Defendant's withholding of requested records in its possession that are not exempt from disclosure under 5 U.S.C. § 552(b) violates, at a minimum, 5 U.S.C. § 552(a)(3)(A) and the corresponding regulations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a)     Assume jurisdiction over this action;

b)     Declare unlawful Defendant's failure to make a determination on the FOIA Request within the statutory expedited time frame, failure to conduct an adequate search for the records requested by Plaintiffs, and failure to disclosure the records requested by Plaintiffs;

c)     Order Defendant to conduct a full, adequate, and expeditious search for the requested records;

d)     Order Defendant to expeditiously process and disclose all responsive, nonexempt records, and enjoin Defendant from improperly withholding the requested records;

---

[3] *Vaughn* indices "describe the justification for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the records nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862, 870 (D.C. Cir. 2009)). The indices are named after the case *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

e)    Award Plaintiffs costs and reasonable attorneys' fees incurred in this action under 5

U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, and any other applicable

statute or regulation; and

f)    Grant such further relief as the Court deems just, equitable, and proper.

Dated: May 6, 2026

Respectfully submitted,

/s/ Gitanjali S. Gutierrez

Alex Valdez, N.Y. 568026*                Gitanjali S. Gutierrez, N.Y. 4183935
Abraham Evans, N.Y. 6273247*             **ACLU FOUNDATION**
**ACLU FOUNDATION**                      201 W. Main St., Ste. 402
125 Broad Street                         Durham, N.C. 27701
18th Floor                               Tel: 919-682-5659
New York,. N.Y. 10004                    ggutierrez@aclu.org
Tel: 212-549-2500
AValdez@aclu.org
a.evans@aclu.org

*Pro hac vice application forthcoming.*

*Attorneys for Plaintiffs*